UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF                                    *       CIVIL ACTION
SOUTHERN SCRAP MATERIAL CO., L.L.C.,
AS OWNER OF THE SOUTHERN SCRAP DRYDOCK              *       NO. 06-1860
IN A CAUSE OF EXONERATION FROM OR
LIMITATION OF LIABILITY

                                                    *       SECTION "F"


ORDER AND REASONS

Before the Court is the government's motion to lift or modify this Court's previous Order directing issuance of notice and restraining prosecution of claims. For the reasons that follow, the motion is GRANTED.

**Background**

On August 29, 2005, when Hurricane Katrina struck New Orleans, a drydock owned by Southern Scrap Material Co., L.L.C. broke free from its moorings on Southern Scrap's facility on the Industrial Canal, crossed the Industrial Canal, and partially sank near the northwest fendering system of the Florida Avenue Bridge.[1] The government considered the sunken drydock a hazard to navigation and determined that it had to be removed.

---

[1] In July 2005, the drydock was towed from Ingalls Shipyard in Pascagoula, Mississippi to Southern Scrap's facility on the Industrial Canal, where it was secured by lines and wire cables to the shore. The drydock was 220 feet long by 157 feet wide by 24 feet deep and displaced 3868 tons.

1

On September 18, 2005, the Army Corps of Engineers undertook to remove the drydock; Boh Brothers was hired and removal was completed on December 2, 2005.[2]  The Corps submitted a claim to Southern Scrap for the $8 million in removal costs.

On April 11, 2006, Southern Scrap filed this limitation proceeding, seeking to limit its liability to the post-casualty value of the drydock.[3]  In accordance with the Limitation of Liability Act, the Court granted Southern Scrap's request to restrain the filing, commencement and further prosecution of all legal proceedings against Southern Scrap based on the drydock breakaway.  Several claims have been filed; only the United States seeks exclusion.

The government now moves for an order lifting the stay of all actions arising out of the drydock breakaway so that it may pursue its damages claim in an *in personam* action against Southern Scrap. It asserts an exclusion from the limitation proceeding by virtue of the Wreck Act.

---

[2] The United States maintains that the Corps asked Southern Scrap to remove the drydock and that Southern Scrap said it would  not be able to do so, but that it would provide blueprints to facilitate in the drydock's removal.  Southern Scrap says the Corps never asked Southern Scrap to remove its sunken drydock but, rather, that the United States removed it without allowing Southern Scrap to do it.

[3] Southern Scrap alleges that the drydock was a vessel, that Southern Scrap was not responsible for the breakaway because it had not acted negligently, and that it anticipated that claims would exceed the post-accident value of the drydock ($316,131.64).

I.

The Wreck Act, which is part of the Rivers and Harbors Act, authorizes the United States to remove wrecks from its navigable waters.  Section 409 of title 33 of the United States Code[4] provides that:

> It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to sink, or permit or cause to be sunk, vessels or other craft in navigable channels.... And, whenever a vessel, raft or other craft is wrecked and sunk in a navigable channel, it shall be the duty of the owner, lessee, or operator of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said, owner, lessee, or operator so to do shall be unlawful; and it shall be the duty of the owner, lessee, or operator of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418 and 502 of this title.

The Wreck Act imposes a duty on the owner, lessee, or operator of a vessel to remove its wrecked vessel.  See University of Texas

---

[4] This provision is referred to as "section 15" of the Rivers and Harbors Act.  See, e.g., Wyandotte Transp. Co. v. United States, 389 U.S. 191, 196-97 (1967); University of Texas Medical Branch at Galveston v. United States, 557 F.2d 438, 441 n.1 (5th Cir. 1977) ("Sections 15, 16, 19 and 20 are collectively known as the Wreck Act").

Medical Branch at Galveston v. United States, 557 F.2d 438 (5th Cir. 1977); In re the Matter of Transporter Marine, 217 F.3d 335, 338 (5th Cir. 2000) (citing University of Texas Medical Branch at Galveston as permitting the government to recover from a negligent party the costs of wreck removal unfettered by the constraints of a limitation proceeding).[5]  Criminal sanctions for violations of Section 409 are provided by Section 411, including both fines and imprisonment.  33 U.S.C. § 411.[6]  Section 412 provides civil

---

[5] The Fifth Circuit's own summary of its decision in University of Texas, as explained in In re Transporter Marine, where it noted the "dearth of authority" regarding scope of exemption from the Limitation Act, is instructive:

> In [University of Texas], the United States spent some three million dollars to remove a wrecked vessel from the sea bottom. The vessel owner filed a limitation action and the United States sought exclusion. We determined that the Wreck Act..., which governs allocation of costs incurred in removing a wrecked vessel, creates a statutory duty to remove the vessel. This in turn results in the owner's bearing the cost of removal, regardless of limitation. Reasoning that the government should not be penalized for promptly removing the wreck, we allowed the government to recover its costs unfettered by the constraints of a limitation proceeding.

217 F.3d at 338.

[6] Section 411 provides in part:

> Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, 409, 414, and 415 of this title shall be guilty of a misdemeanor, and on conviction thereof shall

4

remedies for violations of the duty to remove a wrecked vessel and an in rem remedy exists against the offending vessel. 33 U.S.C. § 412. Before the 1986 amendments, the Supreme Court interpreted Section 409 to include an *in personam* remedy in favor of the government against the wreck's owner. Wyandotte Transp. Co. v. United States, 389 U.S. 191, (1967). Four years after the 1986 amendments, the Fifth Circuit examined Wyandotte and Section 409. See In re the Matter of Barnacle Marine Management, Inc., 233 F.3d 865, 868 (5th Cir. 2000)(noting that Wyandotte interpreted Section 409 to include an implied *in personam* remedy in favor of the United States against the owner of a negligently sunk vessel for wreck removal costs).[7]

---

        be punished by a fine of up to $25,000 per day,....

[7] In Barnacle Marine, the Fifth Circuit considered "whether 33 U.S.C. §§ 408 and 412 create an implied *in personam* remedy for the United States against the owner of a vessel that damages a public work." Id. at 867. Section 408 (rather than Section 409) was at issue. The United States argued that it should be permitted to pursue *in personam* recoveries against the owners of vessels that had damaged a public work, there the Columbia Lock and Dam. Id. at 867. The Fifth Circuit rejected the argument, noting that Section 408 did not provide an *in personam* remedy against vessel owners, and it refused to imply one. Id. at 870.
      Importantly, the Fifth Circuit in Barnacle Marine inferred a difference between Section 408 and 409 (and aided by the Supreme Court decision in Wyandotte) when deciding whether an *in personam* remedy exists for Section 408. See id. (noting that Wyandotte Transp. Co. v. United States, 389 U.S. 191, 196-97 (1967) interpreted Section 409 to include an implied *in personam* remedy in favor of the United States against the owner of a negligently sunk vessel for wreck removal costs).
      Ultimately, the Fifth Circuit determined that Wyandotte's reasons for implying an *in personam* remedy under Section 409 did

The 1986 amendments to the Wreck Act added Section 414(b), which provides:

> The owner, lessee, or operator of such vessel, boat, watercraft, raft, or other obstruction as described in this section shall be liable to the United States for the cost of removal or destruction and disposal as described which exceeds the costs recovered under subsection (a). Any amount recovered from the owner, lessee, or operator of such vessel pursuant to this subsection to recover costs in excess of the proceeds from the sale or disposition of such vessel shall be deposited in the general fund of the Treasury of the United States.

The Court finds that an in personam claim exists under Section 409 in favor of the United States.

---

not apply to the Section 408 case before it. In declining to imply an *in personam* remedy under Section 408, the Fifth Circuit observed:

> Wyandotte does not control this § 408 case because the Wyandotte Court expressly relied on language peculiar to § 409 in implying an *in personam* remedy in favor of the United States against the vessel owner. The Court observed that § 409 created a duty on the owner of the sunken vessel to remove it.... This duty triggered the right of the United States to a declaratory judgment directly the vessel owner to remove the wreck. The Court stated that "[i]t is but a small step from declaratory relief to a civil action for the Government's expenses incurred in removing a negligently sunk vessel." Wyandotte, 389 U.S. at 204, 88 S.Ct. 379 (citation omitted).

II.

Is it appropriate for the Court to exclude the United States from the reach of the Limitation Act?

The parties dispute whether the government may pursue an *in personam* Wreck Act claim outside the Limitation Act to recover removal expenses against the owner of a wrecked vessel, regardless of fault.  At the heart of the dispute is whether the Wreck Act now imposes a strict liability obligation rather than a fault-based obligation on Southern Scrap under Section 409.  In amending Section 409, Congress changed the text from "or to voluntarily or carelessly sink" to read "or to sink", simply omitting the words "voluntarily or carelessly."  This change is of influence on the Court.

Southern Scrap contends that it should not be denied the protections of the Limitation Act, 46 U.S.C. § 183, because it was not at fault for the drydock's sinking.  Southern Scrap's argument suggests a fault-based inquiry.  But omission of the words "voluntarily or carelessly" from the text of the Wreck Act was not, as Southern Scrap contends, simply a deletion of "duplicative and unnecessary language."  Indeed, in maintaining its position, Southern Scrap casually ignores the Fifth Circuit's comment that: "In 1986, nineteen years after Wyandotte, Congress changed 409's standard for liability from negligence to strict liability.  The section was amended in 1986 by substituting the words 'or to sink'

7

for 'or to voluntarily or carelessly sink'...."  See Barnacle Marine, 233 F.3d at 868 n. 6.

In Wyandotte Transp. Co. v. United States, 389 U.S. 191, (1967), the Supreme Court interpreted Section 409 to include an implied *in personam* remedy in favor of the United States against the owner of a negligently sunk vessel for expenses incurred in removing that vessel. The Supreme Court rejected the wreck owner's argument that the specified remedies in the Act were exclusive, noting that the meager criminal penalties plus the United States' *in rem* rights would not serve to reimburse the United States for wreck removal expenses. Id.  But Wyandotte did not resolve whether the Wreck Act claims were subject to the Limitation Act.

Ten years after Wyandotte, however, the Fifth Circuit addressed that question, and answered it in favor of the United States. See University of Texas Medical Branch at Galveston v. United States, 557 F.2d 438 (5th Cir. 1977). The Fifth Circuit instructed that "the Limitation Act does not apply to the government's civil suits under § 15 of the Rivers and Harbors Act for wreck removal expenses against parties negligently responsible for the wreck." Id. at 452. Southern Scrap attempts to escape application of University of Texas by underscoring that it was without fault. The point is weak.

Nine years after University of Texas, Congress amended the Wreck Act by substituting the words "or to sink" for "or to

8

voluntarily or carelessly sink." The Fifth Circuit has noted that this new text "changed the standard for liability from negligence to strict liability." See Barnacle Marine Management, Inc., 233 F.3d at 868 n. 6. The Court agrees; Southern Scrap's assertion that what the appeals court wrote was mere dicta is unpersuasive and otherwise betrayed by the statutory language.[8] The text is uncomplicated.

Based on the language of Section 409,[9] as well as the wisdom of Wyandotte, University of Texas, and Barnacle Marine, the United States has an implied *in personam* remedy against the owner of a sunk vessel, regardless of the wreck owner's fault in sinking the vessel, and escapes the bar of the Limitation Act. Southern Scrap may persist in its assertions of the negligence of the Corps in being responsible for the storm surge that caused the drydock to sink when it counters with its defenses in the government's *in personam* action against Southern Scrap.

---

[8] The Court also declines to indulge Southern Scrap's argument that the United States' alleged negligence in the failure of MR-GO during Hurricane Katrina bars its Wreck Act claim because the United States caused the wreck. This is not relevant to the limited question of whether the Wreck Act claims are subject to the Limitation Act.

[9] The Court further notes that the Fifth Circuit has recently observed that "[t]he purpose of amending the Wreck Act in 1986 was to increase the ability of the Corps of Engineers to recover wreck-removal expenses." See Fuesting v. Lafayette Parish Bayou Vermilion District, 470 F.3d 576, 580 (5th Cir. 2006) (citing S. Rep. No. 99-126, at 26 (1985)).

Accordingly, the United States' motion to lift or modify the order directing issuance of notice and restraining prosecution of claims is GRANTED.

New Orleans, Louisiana, April 26, 2007.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE